1

2

3

4

5

6

**FILED & ENTERED**

**JUL 05 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

7

8

9

10

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

11  In re:

12  MARIA VIRGINIA MARTI,

13                  Debtor.

14

15  MARIO ROMERO,

16                  Plaintiff,

17  vs.

18  MARIA VIRGINIA MARTI and ARMEX
    DESIGN & CONSTRUCTION, INC.,

19

20                  Defendants.

Case No. 2:16-bk-17064-RK

Chapter 7

Adv. No. 2:16-ap-01270-RK

**MEMORANDUM DECISION AND
ORDER GRANTING DEFENDANT'S
MOTION FOR PROTECTIVE ORDER
AND EX-PARTE APPLICATION TO
QUASH PLAINTIFF'S DEPOSITION
SUBPOENA WITH PRODUCTION OF
DOCUMENTS DIRECTED TO
DEFENDANT'S COUNSEL**

Date: May 2, 2017
Time: 3:00 p.m.
Courtroom: 1675

21

22

23

24

25

        Pending before the court are the Motion of Derek  L. Tabone, counsel for

Defendant Maria Virginia Marti ("Defendant"), for Protective Order, Electronic Case Filing

Number ("ECF") 47, filed on September 22, 2016, and Defendant's Ex-Parte Application

to Quash Subpoena, ECF 35, filed on August 24, 2016 (collectively, the "Motions").

26

27

28

        On August 22, 2016, Counsel for Plaintiff Mario Romero ("Plaintiff"), Dimitrios P.

Biller, of the law offices of LDT Consulting, Inc., caused a subpoena to be issued which

directed Defendant's counsel, Derek L. Tabone of the Law Offices of Tabone, APC, to

appear for a deposition and to produce documents.  The subpoena commanded Defendant's counsel, Mr. Tabone, to appear for a deposition and produce documents, including counsel's emails with Jose De La Hoya, a defendant in a state court civil action where Debtor is a plaintiff, documents that counsel received from Mr. De La Hoya, documents filed by counsel in state court on behalf of his clients, Debtor and her former spouse, Donato Cortes, documents regarding settlement of Debtor's state court action against Mr. De La Hoya, copies of pleadings filed by counsel in the state court action against Mr. De La Hoya on behalf of his clients, Debtor and Mr. Cortes, documents related to any release agreement his clients entered into with Mr. De La Hoya, retainer fee agreements between counsel and Debtor, Mr. Cortes, ARMEX Construction, Inc., and ARMEX Design & Construction, Inc., billing statements, invoices and/or bills sent to these clients for any transactional work, emails between counsel and these clients, and any documents exchanged between counsel and these clients.  *Subpoena,* Exhibit A to ECF 35.

On August 24, 2016, Defendant filed an ex parte application to quash Plaintiff's subpoena to compel Mr. Tabone to appear for deposition and produce documents.  ECF 35.  Because the parties had not met and conferred regarding this discovery dispute in order to file a joint discovery dispute stipulation in compliance with Local Bankruptcy Rule ("LBR") 7026-1(c), the court stayed the enforcement of the subpoena until September 27, 2016 in order for the parties to comply with LBR 7026-1(c).  ECF 37.  On September 22, 2016, Defendant filed a Motion for Protective Order, which also included a copy of Defendant's prior ex-parte application to quash the subpoena and the parties' discovery dispute stipulation referred to as a "joint report" regarding the discovery dispute.  *Motion for Protective Order, Joint Report re: Discovery Dispute*, ECF 43.  Pursuant to LBR 7026-1(c), the parties filed their discovery dispute stipulation after they had met telephonically on September 9, 2016.  The court first heard the Motions on March 7, 2017.  The court ruled that the protective order remain in place as to Mr. Tabone and continued the

2

1 | hearing on the Motions to May 2, 2017 at 3:00 p.m. so that Plaintiff could take

2 | Defendant's deposition and reconsider the need for taking the deposition of her counsel,

3 | Mr. Tabone.

4 |       In the parties' discovery dispute stipulation, Plaintiff asserted: "Plaintiff maintains

5 | that Tabone set up and close down, without notice, accounting, liquidation, and

6 | distribution, ARMEX Construction, Inc. to lay the foundation for the ultimate fraud that

7 | occurred in April 2014 when (1) Defendant Marti stop doing business in the name of

8 | ARMEX Construction, Inc. and (2) started doing business in the name of ARMEX Design

9 | & Construction, Inc., thereby cutting Plaintiff and his wife out of the business." *Motion for*

10 | *Protective Order, Joint Report re: Discovery Dispute,* ECF 43 at 15.  According to

11 | Plaintiff, "Plaintiff is entitled to take Tabone's deposition because he has personal

12 | knowledge regarding the demise of ARMEX Construction, Inc., the start-up of ARMEX

13 | Design & Construction, Inc., the lawsuit involving Jose De La Hoya, and the assets,

14 | financial records, business records, and corporate records of ARMEX Design &

15 | Construction, Inc. because he [Tabone] stated "Will be produced" in response to

16 | discovery served Defendant and ARMEX Design & Construction, Inc. when requesting

17 | documents.  Only Tabone can describe what he did in the discovery process, explain why

18 | he gave inconsistent statements in four declarations (five if the Declaration he filed in the

19 | Court of Appeals is included).  He is the only person who can explain what the

20 | documents were not produce [sic] and why fallacious responses to discovery were

21 | served on Plaintiff.  As the trial lawyer he is the only person who can explain way [sic] he

22 | called Leonardo Gomez and Jose De La Hoya as witnesses when they lack any

23 | knowledge about the subject matter of their testimony.  Only Tabone can testify what

24 | steps he took to make sure that all relevant documents, and materials that are

25 | reasonably calculated to lead to the discovery of admissible evidence were preserved.

26 | Only Tabone can testify as to what he told his client regarding discovery responses,

27 | production of document[s], trial strategy on the NEW story they told to the jury that was

28 |

never presented to Plaintiff in the discover[y] process.  Know ARMEX Construction, Inc. produced (1) Check Registers, (2) financial statements, (3) tax returns, (4) construction folders, (5) QuickBooks, (6) by-laws, (7) minutes, (8) certificate of shares, and (9) all bank statements in discovery, why didn't ARMEX Design & Construction, Inc. produce the same documents in the same litigation and discovery process [in the state court litigation].  Only Tabone can testify as to what he did and did not do to obtain these records."  *Id.* at 22.

Having considered the moving and opposing papers, the court vacated the May 2, 2017 hearing through a tentative ruling and telephonic notice before the hearing, taking the Motions under submission, and now grants the Motions.

Federal Rule of Civil Procedure 45(d)(3)(A)(iii)-(iv), made applicable to this adversary proceeding by Federal Bankruptcy Procedure Rule 9016, states "[T]he court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  One of the "exceptions" that could apply is the crime-fraud exception to attorney-client privilege.

**A. The Crime-Fraud Exception**

Based on the crime-fraud exception, Plaintiff seeks to obtain from Defendant's counsel, Mr. Tabone, information that is otherwise privileged.  "To invoke the crime-fraud exception, the party seeking disclosure must first 'make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity.'"  *In re National Mortgage Equity Corp. Mortgage Pool Certificates Litigation*, 116 F.R.D. 297, 300 (C.D. Cal. 1987) *quoting, United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977).  "This prima facie case must be established through evidence independent of the communications sought to be disclosed."  *Id., citing*, *United States v. Zolin*, 809 F.2d 1411, 1418 (9th Cir. 1987).   "However, for the purpose of abrogating the

attorney-client privilege, the party seeking disclosure need not show that the attorney knowingly participated in the crime or fraud." *Id.*

"If the party seeking disclosure successfully establishes this prima facie case, it must *then* be determined whether the particular communications sought were in furtherance of the crime or fraud." *Id.* (emphasis in original).   "Unless the prima facie case is so broad that *all* communications can be considered in furtherance of the crime or fraud, the Court, a magistrate or master must conduct an *in camera* review of the documents or communications to determine whether they are reasonably related to, or within the scope of, the prima facie showing of the criminal act or fraud." *Id.* (emphasis in original)*, citing, In re A.H. Robins Co.,* 107 F.R.D. 2, 15 (D. Kan. 1985).

Based on this record, the court determines that Plaintiff has made out a prima facie showing for the crime-fraud exception on this record because there is sufficient independent evidence to show that the attorney, Mr. Tabone, was retained in order to promote intended or continuing criminal or fraudulent activity.  Plaintiff alleges that Defendant used her corporations to embezzle and divert funds from Plaintiff through the creation of a new, but similarly named, business entity to transfer the assets in another entity in which Plaintiff had an interest, and retained counsel, Mr. Tabone, to assist Defendant and her business.  *Motion for Protective Order, Joint Report re: Discovery Dispute,* ECF 43 at 9 ("In this case, Maria Virginia Marti ('Marti') and ARMEX Design & Construction, Inc. retained Derek Tabone to commit or assist them to commit crimes and frauds: embezzle money out of ARMEX Construction, Inc. and use that money to fraudulently start up ARMEX Design & Construction, Inc.; conceal the legal status of ARMEX Design & Construction, Inc.; conceal or destroy financial records, corporate records, and electronically stored e-mails.").  In support of these assertions, Plaintiff has offered as an exhibit the state court judgment after a civil jury verdict in his favor, which upholds these allegations against Defendant, including claims for fraud and conversion. *Judgment on Special Verdicts, Romero v. Marti, Case No. VC064236 (Superior Court of*

1   *California, County of Los Angeles), Exhibit 14 to Declaration of Dimitrios P. Biller*

2   *Regarding Exhibits "1" through "30" in Support of Plaintiff's Position Regarding the Joint*

3   *Statement Related to the Defendant's Motion to Quash*, ECF 44, filed on September 22,

4   2016.   Plaintiff asserts in opposing the Motions that Defendant's counsel was involved in

5   creating this entity to which Debtor had assets transferred:  "Tabone created ARMEX

6   Design & Construction Inc. with Marti" and "did the corporate work for ARMEX Design &

7   Construction, Inc."  ECF 98 at 9.  Thus, there is evidence independent of the

8   communications sought to be disclosed to show that the attorney was retained to

9   promote intended or continuing fraudulent, if not criminal, activity.

10       However, this does not necessarily mean that the attorney knowingly participated

11   in the fraud, [1] and as noted above, Plaintiff is not required to show as much.  *In re*

12   *National Mortgage Equity Corp. Mortgage Pool Certificates Litigation*, 116 F.R.D. at 300.

13   Since it appears that Plaintiff has made a prima facie case of a crime-fraud exception for

14   disclosed of privileged information through evidence independent of the communications

15   sought to be disclosed, it is appropriate to consider the second step of the analysis of

16   "whether the particular communications sought were in furtherance of the crime or fraud."

17   *Id*. (citation omitted).  For such a showing, the court "must conduct an *in camera* review

18   of the documents or communications to determine whether they are reasonably related

19   to, or within the scope of, the prima facie showing of the criminal act or fraud."  *Id*.

20   (emphasis in original).

21       Before the court proceeds to this second step in analyzing the crime-fraud

22   exception, the court considers the factors for compelling the deposition of an opposing

23

24   ―――――――――――――――――

25   [1] As to actions of Defendant's counsel, Plaintiff contends that counsel knowingly participated in Defendant's alleged fraud because counsel engaged in intentional destruction of evidence in a previous state court proceeding by stating, "There is only one reason an attorney would not allow counsel to ask questions

26   about a broken computer: intentional destruction of evidence."  ECF 98, at 25.  That  counsel objected to, and did not allow his client to answer, questions of the opposing counsel regarding a broken computer

27   does not necessarily lead to an inference that objecting counsel had destroyed evidence without any other corroborating facts.  The court does not draw such an inference on this sparse record.

28

1   counsel, and whether the subpoenaed testimony under the totality of the circumstances

2   of this case.

3           B.     ***Criteria for Depositions of Opposing Counsel***

4       "Litigation counsel are *presumptively entitled* to a protective order against being

5   deposed by an adversary."  3 O'Connell and Stevenson, *Rutter Group Practice Guide:*

6   *Federal Civil Procedure Before Trial,* ¶11:1142, at 11-176 (2017) (emphasis in original),

7   *citing*, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)

8   ("*Shelton*"); *accord, Boughton v. Cotter Corp.,* 805 F.3d 823, 829-830 (10th Cir. 1995); *but*

9   *see, In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2nd Cir.

10   2003)(*"Friedman"*)(suggesting a "more flexible" approach in whether to allow depositions

11   of opposing counsel).  To rebut this presumption under the Eighth Circuit's view in

12   *Shelton*, the party seeking the deposition must convince the court that (1) opposing

13   counsel has information that is relevant and nonprivileged; (2) the information is crucial to

14   preparation of the case; and (3) no means exist to obtain the information other than to

15   depose opposing counsel.  *Shelton v. American Motors Corp.*, 805 F.2d at 1327.

16       The Second Circuit in *Friedman* took a somewhat holistic approach to lawyer

17   depositions, stating that the court should "take[ ] into consideration all of the relevant

18   facts and circumstances to determine whether the proposed deposition would entail an

19   inappropriate burden or hardship."  *In re Subpoena Issued to Dennis Friedman,* 350 F.3d

20   at 72.  According to the Second Circuit, "[s]uch considerations may include the need to

21   depose the lawyer, the lawyer's role in connection with the matter on which discovery is

22   sought and in relation to the pending litigation, the risk of encountering privilege or work-

23   product issues, and the extent of discovery already conducted."  *Id.; accord, Younger*

24   *Mfg. Co. v. Kaenon,* 247 F.R.D. 586, 588 (C.D. Cal. 2007).

25       The Ninth Circuit has not expressly adopted the test in either *Shelton* or *Friedman*

26   or its own test.  *See, Younger Mfg. Co. v. Kaenon,* 247 F.R.D. at 588.  The court in this

27   instance will look at both tests in *Shelton* and *Friedman*.

28

Under the *Shelton* criteria, it appears to the court that Plaintiff has not rebutted the presumption as articulated in that case. First, the court determines that some of the information that Plaintiff seeks is relevant and/or may not be privileged, but some is not relevant and/or is privileged. In this case, Plaintiff seeks to depose opposing litigation counsel to elicit counsel's testimony regarding Defendant's actions. In this proceeding, the court is concerned with whether Plaintiff can meet his burden to prove that the statutory requirements of 11 U.S.C. § 727(c),(d), and (e) are met for revocation of Defendant's discharge in addition to the statutory requirements of 11 U.S.C. § 523(a)( 2), (a)(4) and (a)(6) for the court to deem Defendant's debt owed to Plaintiff non-dischargeable. In the First Amended Complaint, ECF 9, filed on June 20, 2016, Plaintiff alleges two sets of claims that: (1) Defendant's discharge should be denied because she made false material statements under oath on her bankruptcy petition and schedules and (2) the judgment debt from his state court action against Defendant should be excepted from discharge.

Essentially, Plaintiff argues that Defendant's counsel, Mr. Tabone, helped his clients in legal work in forming business entities which his clients, Defendant and her businesses, used to allegedly defraud others, including Plaintiff, and then assisted Defendant in concealing documents in the state court litigation. *Id.* It appears to this court that these allegations Plaintiff made regarding counsel, Mr. Tabone, are not relevant to this case as to the claims in this case about what Defendant did in making statements on her bankruptcy documents, but would be relevant as to what she did to make the judgment debt she allegedly owed to Plaintiff nondischargeable, that is, as determined by the state trial court after a jury verdict, Defendant engaged in fraud and conversion of Plaintiff's assets, which allegedly occurred through the business entities that Defendant's counsel helped to organize for her. While counsel may not have knowingly participated in Defendant's fraud, his actions in forming business entities for Defendant may have assisted Defendant in the fraud, and are thus relevant, and in turn,

the communications between Defendant and her counsel may also be relevant to the
issue of fraud and debt dischargabilility.  As discussed previously, the crime-fraud
exception to the attorney-client privilege may apply under the circumstances of this case.
However, Plaintiff also seeks information from Defendant's counsel about litigation of
Plaintiff's state court action, including litigation strategy and discovery dispute issues,
which implicate the attorney-client privilege and the attorney work product doctrine.
Plaintiff's theory is that counsel knowingly participated in Defendant's fraud scheme, and
thus, none of this information is privileged under the crime-fraud exception.  The court is
not so sure on this record, and it would have to consider the information claimed to be
privileged in camera under the two-step analysis set forth in *National Mortgage Equity
Corp. Mortgage Pool Certificates Litigation*, 116 F.R.D. at 300.

The court should consider the remaining two *Shelton* factors for whether the
lawyer deposition may be taken.  The second factor that the court should determine is
whether the information to be obtained through counsel, Mr. Tabone, personally is crucial
to the preparation of the case.  The court is not so sure about this because Plaintiff has
already obtained a state court judgment in his favor that Defendant is indebted to him and
that Defendant engaged in acts of fraud and conversion with malicious intent.  These
findings of fact of the state court, if entitled to preclusive effect, would establish Plaintiff's
claims of nondischargeability under 11 U.S.C. § 523(a)(2) and (6), if not, (a)(4).
However, the judgment debt is under appellate review, and under California law, a state
court judgment is not final for res judicata purposes until it is final after appeal.  California
Code of Civil Procedure, § 1235.120; *Southern Public Utility District v. Silva*, 47 Cal.2d
163, 165 (1956) (citing predecessor statute to California Civil Code § 1235.120).   Thus,
the court should consider whether or not it should abstain in hearing Plaintiff's debt
dischargeability claims under 11 U.S.C. § 523 in light of the pending resolution of the
state court appeal since resolution of the appeal in Plaintiff's favor would make the
requested discovery of Defendant's counsel unnecessary.   *See In re Tucson Estates,*

1    *Inc.,* 912 F.2d 1162, 1166-1167 (9th Cir. 1990).  The court will be discussing the

2    possibility of permissive abstention with the parties as to Plaintiff's claims under 11

3    U.S.C. § 523 at an upcoming status conference on August 15, 2017.  As to Plaintiff's

4    claims under 11 U.S.C. § 727, the requested discovery of Defendant's counsel does not

5    appear to be reasonably calculated to lead to discovery of admissible evidence since the

6    claims relate to Defendant's disclosures, or lack of disclosure, on her bankruptcy

7    documents rather than what transpired prepetition in forming business entities for

8    Defendant or in the state court litigation between the parties.

9        The third *Shelton* factor is whether the information that Plaintiff seeks to obtain

10    from Defendant's counsel can be obtained by other means.  Any of the documents of

11    Defendant, ARMEX Construction Inc., and ARMEX Design Construction, Inc. could be

12    obtained by seeking discovery of these documents directly from those parties directly and

13    not through counsel personally.  The state court pleadings that Plaintiff requests of

14    Defendant's counsel are publically available documents that Plaintiff already has ready

15    access to, so counsel should not be forced to provide them to Plaintiff.  In this case,

16    where the parties have been engaged in extensive discovery in past litigation, and where

17    multiple parties have been involved, Plaintiff cannot reasonably argue that there are no

18    other means of obtaining this information other than to take the deposition of the

19    opposing counsel.  As such, the court determines that this would not be a sufficient

20    reason to subject Defendant's counsel, Mr. Tabone, to a deposition taken by the

21    opposing counsel.  If there are inconsistencies in Defendant's testimony as Plaintiff

22    asserts, Plaintiff will be able to show this at trial without having to take the deposition of

23    her attorney.  Furthermore, Plaintiff's counsel has also stated on the record that he has

24    "gathered a lot of evidence in the other state cases."  *Audio Recording of the Hearing on*

25    *March 7, 2017 at 3:02 p.m.*  The fact that Plaintiff has "a lot" of evidence already suggests

26    to the court that Plaintiff has what he needs to present his case without having to take the

27    deposition of Defendant's counsel.

28

Under the "more flexible" approach of the Second Circuit in *Friedman,* the court considers "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d at 72. The non-exclusive considerations that the court may look at under *Friedman* include: (1) the need to depose the lawyer; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege or work-product issues, and (4) the extent of discovery already conducted." *Id.* Under the *Friedman* factors, the analysis should come out the same in this court's view. As discussed previously, the need to depose the lawyer is questionable, given the probable res judiciata effect of the state court judgment and the lack of relevance of the discovery to the other claims under 11 U.S.C. § 727. The lawyer was involved in the formation of businesses for Defendant, which allegedly perpetrated a fraud on Plaintiff, and there may be some justification for some discovery once the court reviews information in camera relating to Plaintiff's argument for discovery under the crime-fraud exception. However, Plaintiff's claim that the crime-fraud exception is more tenuous as to what counsel did in the litigation between the parties in state court since it appears from the pleadings that Plaintiff is seeking to establish liability of counsel rather than Defendant, which is not germane to claims at issue in this adversary proceeding. As discussed earlier, there is substantial risk on encountering attorney-client privilege and attorney work product doctrine issues, and the court would have to engage in in camera review to determine whether it is appropriate to apply the crime-fraud exception here. As to the extent of discovery already conducted, it appears that Plaintiff has conducted substantial discovery in the state court litigation and is already taking discovery of Defendant and other persons in this proceeding, and it is not clear that Plaintiff cannot get the discovery he needs through these persons directly as opposed to counsel indirectly.

1    Accordingly, it is hereby ordered that the Motions of Defendant and her counsel,

2  Mr. Tabone, the Motion for Protective Order and Defendant's Ex-Parte Application to

3  Quash Subpoena Served on Derek Tabone, are granted only in a limited extent that the

4  deposition subpoena and subpoena duces tecum to Defendant's counsel, Mr. Tabone,

5  are stayed under further order of the court, pending a ruling on whether the court should

6  permissively abstain on hearing Plaintiff's claims under 11 U.S.C. § 523.

7    **IT IS SO ORDERED.**

8                                        **###**

Date: July 5, 2017

                                    _____

                                    Robert Kwan
                                    United States Bankruptcy Judge